## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEANA DEVINCENZO, | : | NO. 1:24-CV-00371 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (CAMONI, M.J.) |
| CATHERINE HERSHEY SCHOOLS | : | |
| FOR EARLY LEARNING, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

This matter comes before the Court upon Defendant Catherine Hershey Schools for Early Learning's ("CHS") motion for summary judgment. Doc. 36. Plaintiff Deana Devincenzo opposed, and CHS replied. Docs. 42, 44. The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Federal Rule of Civil Procedure 78(b). For the reasons below, the Court grants in part and denies in part CHS's motion for summary judgment.

## I.    BACKGROUND

### A.    Undisputed Facts

Devincenzo alleges employment discrimination claims under Title VII of the Civil Rights Act, 42 U.S.C. § 1981, Americans with Disabilities

Act ("ADA"), and Pennsylvania Human Relations Act ("PHRA") against CHS. Amended Complaint, Doc. 20 at 1.

### 1.    CHS, the Hershey Center, and Devincenzo's employment

CHS is a non-profit corporation established to provide education to children who are economically disadvantaged. Def.'s Statement of Material Facts ("SMF"), Doc. 38 ¶¶ 1–2; Pl.'s Response SMF, Doc. 43 ¶¶ 1–2. In October 2023, CHS opened the Catherine Hershey Schools for Early Learning, Hershey ("Hershey Center"), an education center in central Pennsylvania established to provide free schooling, nutritious meals, and transportation to enrolled children. Doc. 38 ¶¶ 2, 4, 6; Doc. 43 ¶¶ 2, 4, 6.

Before officially opening its doors in 2023, the Hershey Center began hiring employees from July 2022 to prepare them to work with children. Doc. 38 ¶¶ 9–10; Doc. 43 ¶¶ 9–10. Devincenzo was one such employee. She was hired to work as a Health Services Manager ("HSM") from September 6, 2022, to February 15, 2023. Doc. 38 ¶¶ 12–13; Doc. 43 ¶¶ 12–13.[1] Devincenzo has a master's degree in nursing, leadership, and

---

[1] Devincenzo argues that both the Hershey Center and CHS employed her under a joint employer theory. Pl.'s Br., Doc. 42 at 11.

management, which exceeded the listed job qualification for the HSM position. Doc. 43 at 12; Def.'s Ex. N, Doc. 38-1 at 180–81.

### 2. *Key employees at CHS and the Hershey Center*

Many names of employees appear throughout this case. The Court identifies only the following individuals who are pertinent to addressing the instant motion:

1. Senate Alexander, executive director at CHS. Doc. 38 ¶ 8; Doc. 43 ¶ 8.

2. Shaun Turner, CHS enrollment management and family success director. Doc. 38 ¶ 43; Doc. 43 ¶ 24.

3. Elizabeth Kroutch, human resources director at CHS. Kroutch Tr., Doc. 42-13 at 12:3–4.

4. Megan Ribbans, human resources manager at CHS. Ribbans Tr., Doc. 42-12 at 14:19–22.

5. Anna Papero, center director at the Hershey Center. Doc. 38 ¶ 35; Doc. 43 ¶ 35.

6. Melissa Ilski, center director at the Hershey Center. Doc. 42-13 at 61:22–23; Doc. 43 ¶ 42.

7. Steven Metzger, former teacher's assistant at CHS. Metzger Cert., Doc. 42-5 ¶¶ 2–3.

8. Melissa Harper, infant toddler lead teacher at CHS. Harper Tr., Doc. 42-24 at 12:9–14.

**B.    Disputed Facts**

The parties primarily dispute three issues: (1) which entity employed Devincenzo (CHS or the Hershey Center); (2) how her employment ended (termination or resignation); and (3) whether she suffered discrimination based on race and disability. Doc. 38 ¶¶ 10–12, 42–44, 50; Doc. 43 ¶¶ 10–12, 42–44, 50.

### 1.    *Devincenzo's employer*

CHS contends that the Hershey Center, during its pre-opening stage, hired Devincenzo. Doc. 38 ¶¶ 9, 12, citing Def.'s Ex. K, Doc. 38-1 at 138. Devincenzo disagrees, asserting that the Hershey Center was not "open or operating at the time [she was] hire[d]." Doc. 43 ¶ 10, citing Alexander Tr., Doc. 42-17 at 12:12–16. She further maintains that CHS paid and raised her salary, required her to follow its policies and procedures, and exercised control over her daily employment activities. Doc. 43 ¶¶ 12, 32, first citing Paystub, Doc. 42-7 at 2; and then citing CHS employee handbook, Doc. 42-8. As further discussed in the Court's analysis, Devincenzo asserts a joint employer theory of liability, arguing that CHS was a co-employer with Hershey Center. *See* Pl.'s Br., Doc. 42 at 11.

### 2. *How Devincenzo's employment ended (termination or resignation)*

CHS asserts that Devincenzo resigned from her position. Doc. 38 ¶ 33. It maintains that it offered Devincenzo transition assistance, at which point Devincenzo resigned. Def.'s Br., Doc. 37 at 20. It also points to a resignation letter that Devincenzo signed and dated. Doc. 38 ¶ 45, citing Def.'s Ex. L, Doc. 38-1 at 140.

Devincenzo contends that she was terminated. Doc. 43 ¶ 33, citing Devincenzo Tr., Doc. 42-2; *id.*, citing Doc. 42-13. Devincenzo testified that she was first informed of her termination via a phone call with Ribbans, CHS's HR manager, and Melissa Ilski, the Hershey Center director. *See* Doc. 42-2 at 164:10–18. After that phone call, Devincenzo received an email from Ribbans which provided termination instructions, including returning physical equipment, submitting a resignation letter, and signing a separation agreement. *Id.* at 166:14–25, 167:7–14. Devincenzo followed the instructions and returned her computer and badge, along with a resignation letter, but declined to sign the separation agreement which would have given her transitional assistance in exchange for a general release of claims. *Id.* at 166:22–25. Responding to CHS's counsel asking why she submitted a resignation letter if she was in fact

terminated, Devincenzo explained, "I believe I was just trying to, could have been erroneous on my part, trying to make it better so it doesn't look like I was terminated." *Id.* at 167:3–5.

Kroutch, CHS's HR director, confirms Devincenzo's testimony. Kroutch testified that CHS was "parting ways" with Devincenzo and indicated that she would be terminated if she did not resign. Doc. 42-13 at 65:10–20. But to help Devincenzo from a career perspective to allow her to say she "technically resigned," CHS offered to accept a resignation. *Id.*

### 3.    *Whether Devincenzo suffered discrimination*

Finally, the parties dispute the merits of Devincenzo's employment discrimination claims. The main dispute involves whether Devincenzo made a complaint based on race discrimination in early February 2023. Def.'s Reply Br., Doc. 44 at 5–6; Doc. 42 at 6. Devincenzo testified to calling a meeting with Turner, Ilski, and Kroutch, in which she complained of discrimination based on race. Doc. 42-2 at 130:23–25 ("Yes, I did call the meeting to express . . . I was being discriminated based upon the race."). CHS maintains that the meeting was called to discuss Devincenzo's job performance issues. Doc. 44 at 7–8.

### C.    Procedural History

On March 1, 2024, Devincenzo filed a complaint against CHS and Milton Hershey School ("MHS"). Doc. 1. The parties later stipulated to Devincenzo filing an amended complaint. Doc. 18. After Devincenzo filed an amended complaint against the Defendants,  the parties stipulated to dismissing MHS as a defendant. Docs. 20, 26. In the Amended Complaint against CHS, Devincenzo alleged the following claims: (1) Title VII race discrimination, retaliation, and hostile work environment; (2) Section 1981 race discrimination, retaliation, and hostile work environment; (3) Americans with Disabilities Act ("ADA") disability discrimination, retaliation, and failure to accommodate; and (4) Pennsylvania Human Relations Act ("PHRA") race discrimination, disability discrimination, retaliation, hostile work environment (race), and failure to accommodate. Doc. 20 ¶¶ 41–67.

Following discovery, CHS moved for summary judgment. Doc. 36. The motion is fully briefed. Docs. 42, 44. The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, including entry of final judgment. Doc. 12.

## II.  <u>LEGAL STANDARD</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006), citing *Anderson*, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248.

The moving party bears the burden of showing that no genuine dispute exists such that summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004), citing *Anderson*, 477 U.S. at 255. Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Credibility determinations are "the province of the factfinder." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The court's role, at the summary judgment stage, is "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There can be "no genuine issue as to any material fact," however, if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. __DISCUSSION__

The Court first examines the threshold question, whether CHS is an employer under Title VII and § 1981, before addressing the merits of the Plaintiff's employment discrimination claims.

### A.  Whether CHS was the Plaintiff's employer under the theory of joint employer liability[2]

CHS argues that summary judgment is warranted because it is not Devincenzo's employer. *See* Doc. 37 at 11–13. It reasons that it is a separate, legal entity distinct from Devincenzo's actual employer, the Hershey Center. *Id.* Devincenzo contends that CHS was also her employer. Doc. 42 at 11.

At this stage, the Court evaluates whether the nonmoving party, Devincenzo, has submitted sufficient evidence to create a genuine issue for trial. *See Anderson*, 477 U.S. at 249. Construing all facts and inferences in the light most favorable to Devincenzo, the Court finds that Devincenzo has established a genuine dispute of material facts as to whether CHS was Devincenzo's co-employer. *Boyle*, 139 F.3d at 393.

---

[2] Under Title VII and § 1981 employment discrimination claims, two entities can be treated as joint employers of one employee. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 212–14 (3d Cir. 2015). The Court also applies the joint employer test to the PHRA claim because it interprets PHRA claims coextensively with Title VII. *See Peterkin v. Prospect Airport Servs., Inc.*, No. 21-490, 2021 WL 2400753, at *10 n.84 (E.D. Pa. June 11, 2021), citing *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 179 n.1 (3d Cir. 2009).

### 1.    *Standard for joint employer theory of liability*

The Court of Appeals for the Third Circuit recognizes the existence of joint employers when "two [corporations] control, in the capacity of employer, the labor relations of a given group of workers." *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982). The joint employer theory accepts business entities as "in fact separate but that they *share* or co-determine those matters governing the essential terms and conditions of employment." *Id.* (emphasis in original). Thus, "the proper inquiry under Title VII for determining employer status looks to the nature of the relationship regardless of whether that party may or may not be technically described as an 'employer.'" *Graves v. Lowery*, 117 F.3d 723, 728 (3d Cir. 1997).

The Third Circuit applies the factors in *Nationwide Mut. Ins. v. Darden*, 503 U.S. 318 (1992), to determine whether two entities may be liable under Title VII as co-employers. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213–14 (3d Cir. 2015). Although *Darden* provides a list of factors, the Third Circuit has generally focused on: (1) which entity paid the employees' salaries; (2) hired and fired them; and (3) had control over their daily employment activities. *Id.* at 214; *see Hollinghead v. City of*

*York*, 11 F. Supp. 3d 450, 463 (M.D. Pa. 2014) (noting that courts in the Third Circuit will apply three factors to determine joint employer liability). The inquiry under these factors is not which of two entities should be considered the employer of the person in question, but whether two entities may be "co-employers" or "joint employers." *Faush*, 808 F.3d at 215, citing *Graves*, 117 F.3d at 727.

### 2.    *Application of Faush factors*

Under the three *Darden* factors underscored in *Faush*, there is a genuine dispute as to whether CHS is an employer. Devincenzo easily meets the first factor because she has submitted evidence that CHS paid her salary. Doc. 43 ¶ 12, citing Doc. 42-7 at 2. And CHS has not disputed this. *See generally* Docs. 37, 44.

### a.    **Hiring and firing**

The second factor is less straightforward, but it also favors Devincenzo. CHS has submitted a new hire email that specifies Devincenzo was hired for the HSM position at the Hershey Center. Def.'s Ex. K, Doc. 38-1 at 138 ("Congratulations on being hired for the [HSM] position at Catherine Hershey School for Early Learning, Hershey."). That fact does illustrate that Hershey Center employed Devincenzo, but

Plaintiff does not contest that. Doc. 42 at 14–15. Devincenzo, instead, maintains that CHS was her "joint employer" because "both [Hershey Center and CHS] controlled aspects of her employment." *Id.* at 14. And the Third Circuit undoubtedly recognizes that theory of liability. *Browning-Ferris*, 691 F.2d at 1123; *Graves*, 117 F.3d at 728.

To demonstrate that CHS hired her, Devincenzo submits evidence of CHS issuing a welcome letter. Pl.'s Ex. H, Doc. 42-9 at 2. While not dispositive, "employee expectations are . . . relevant to [the joint employer] analysis." *Graves*, 117 F.3d at 728–29. In its reply brief, CHS attempts to discredit the welcome letter, emphasizing that it "actually is the first page of the employee handbook distributed to all Hershey Center employees." Doc. 44 at 3. No matter. Devincenzo, in fact, incorporates this very fact in her argument to establish that CHS exercised control over her employment. *See* Doc. 42 at 12–13 ("[Plaintiff] was issued a Defendant handbook and required to abide by Defendant's policies and procedures."). Further, CHS avers that it raised Devincenzo's salary in the first few weeks of her employment, and cites to an email from Kroutch, its HR director. Doc. 38 ¶ 49, citing Def.'s Ex. S, Doc. 38-1 at 193. No Hershey Center personnel are included in the email chain that

CHS cites to illustrate that it raised Devincenzo's salary, and it is undisputed that Kroutch is a CHS HR director. Drawing all reasonable inferences in Devincenzo's favor, a rational factfinder could consider CHS as the entity that paid and hired Devincenzo.

As to whether CHS terminated the employment, Devincenzo also submits sufficient evidence to raise a triable issue. She points the Court to Kroutch's deposition testimony. Doc. 43 ¶ 33, citing Doc. 42-13. Drawing reasonable inferences in Devincenzo's favor, the testimony demonstrates that Kroutch, as HR director for CHS, participated in and signed off on Devincenzo's termination. Doc. 42-13 at 12:2–4, 63:4–25; *see Smith v. Syncreon.US, Inc.*, No. 22-744, 2024 U.S. Dist. LEXIS 167905, at *11 (M.D. Pa. Sept. 18, 2024) (giving weight, under the joint employer test, to an employer's ability to end a plaintiff's employment even though it did not in fact terminate the plaintiff). The Court, therefore, finds a genuine issue as to whether CHS hired and fired Devincenzo.

### b.    Control over daily employment activities

The final factor asks whether CHS had control over Devincenzo's daily employment activities. *Faush*, 808 F.3d at 214. The court in *Faush* found that many factors could demonstrate level of control over daily

14

employment activities. It found in favor of the employee-plaintiff because the alleged co-employer entity: (1) had the employee-plaintiff working on-site; (2) gave the employee-plaintiff assignments; (3) directly supervised the employee-plaintiff; (4) provided site-specific training; (5) furnished any equipment and materials necessary; and (6) verified the number of hours he worked on a daily basis. *Id.* at 216. The *Faush* court, however, held that even absent some of the above factors, courts may still find a sufficient level of control for a co-employer status at summary judgment. *See id.* at 217, citing *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344 (3d Cir. 1991) ("Even when confronted with stronger evidence against the purported employee, we have held that a rational jury could find the existence of a common-law employment relationship."). Here, Devincenzo marshals enough evidence to meet several of the factors that demonstrate that CHS controlled Devincenzo's daily employment activities.

For instance, CHS leadership testified that the Hershey Center did not open until over a year after Devincenzo was hired. Doc. 38 ¶ 10, citing Doc. 38-1 at 8 (Alexander Tr. at 12), 36 (Turner Tr. at 41). And during that time, CHS leadership met weekly with Devincenzo, working as a

team to think about how health services models "get put in place at a daily level at [CHS]." Doc. 38-1 at 32 (Turner Tr. at 24:21-25, 25:1-8). She was also directly supervised by CHS personnel for at least three months during those weekly meetings, and received direct assignments and feedback. *Id.* at 32–33 (Turner Tr. at 25:19-25, 26:1-11. This level of control suffices, at this stage, to demonstrate that CHS exercised control over Devincenzo's daily employment activities. *See Faush*, 808 F.3d at 218 (finding that although the employee-plaintiff was not paid by the alleged co-employer entity, the fact that employee-plaintiff worked under the direct supervision and control of the co-employer who gave instructions on the details of the work, sufficiently demonstrates co-employment status).

While the Third Circuit has held that a modicum of control alone is insufficient to establish co-employer status, that holding has been applied when there existed a "mound" of counter-evidence against a finding of joint employer. *Bird v. Mastery Charter Sch.*, No. 24-2228, 2025 U.S. App. LEXIS 10363, at *4 (3d Cir. Apr. 30, 2025) (finding a "modicum of control" insufficient to outweigh a mound of counter-evidence against finding that defendant is a co-employer). For instance, the plaintiff in

*Bird* could not establish the first two factors in *Faush*. *Id.* at *3 (finding that defendant did not hire or fire the plaintiff and did not pay her). Having some evidence of control as the only factor weighing in the plaintiff's favor, the *Bird* court did not find the defendant a joint employer, emphasizing that no one factor is decisive in the co-employer analysis. *Id.*, citing *Faush*, 808 F.3d at 214.

Here, unlike the *Bird* plaintiff, Devincenzo establishes the first two *Faush* factors and submits sufficient evidence to establish that CHS controlled her daily employment activities. First, Devincenzo submits CHS's handbook which detailed CHS's policies and procedures that she was required to follow. Doc. 42 at 12. CHS does not dispute this fact but contends that it "weigh[s] against a finding that CHS is a joint employer." Doc. 44 at 4. Not so. CHS's handbook plainly states that "the policies, procedures and programs set forth in this Handbook apply, not only to all CHS Central Office employees, but likewise across the board to each ECEC location and all employees." Pl.'s Ex. G, Doc. 42-8 at 5. A reasonable factfinder could conclude that Devincenzo being covered by CHS's policies and procedures tends to demonstrate CHS's control over her employment. *Graves*, 117 F.3d at 728–29 (finding as significant to the

joint employer analysis that plaintiffs-employees were covered by employer's policies and procedures).

Second, CHS leadership testified that the Hershey Center did not open until over a year after Devincenzo was hired. Doc. 38 ¶ 10, citing Doc. 38-1 at 8 (Alexander Tr. at 12), 36 (Turner Tr. at 41). Drawing all reasonable inferences in Devincenzo's favor, the Court finds that a rational factfinder could infer that in the first year before Hershey Center officially opened, CHS exercised control over Devincenzo's employment.

Third, when Devincenzo submitted a discrimination complaint against her supervisor, it was CHS's executive and HR directors, and not Hershey Center's leadership, who met with Devincenzo and sent her a letter informing her of the investigation. *See* Doc. 42-13 at 22–23; Def.'s Ex. Q, Doc. 38-1 at 189.

Mindful that, at this stage, this Court "may not make credibility determinations or engage in any weighing of the evidence," it finds that Devincenzo has created a genuine dispute as to whether CHS exercised control over her daily employment activities and thus was her employer. *Marino*, 358 F.3d at 247.

Accordingly, the Court will deny Defendant's motion for summary judgment as it pertains to whether CHS was Devincenzo's employer.[3]

## B.     There is a genuine dispute as to Devincenzo race discrimination claim.

When, as in this case, a plaintiff does not provide direct evidence of discrimination, the three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) governs the Court's inquiry under Title VII.[4] *Burton v. Teleflex Inc.*, 707 F.3d 417, 425–26 (3d Cir. 2013). The *McDonnell Douglas* framework provides:

> First, the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." [*McDonnell Douglas*, 411 U.S. at

---

[3] CHS cites to only one case to support its non-employer argument. *See* Doc. 37 at 12–13, citing *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 119 (3d Cir. 2013)); Doc. 44 at 2–5 (citing no cases). The *Covington* court found that a defendant-employer "may fairly be identified as Covington's employer," because he paid the plaintiff, which is "one of the principal indicia of an employer-employee relationship." *Id.* Devincenzo has established that CHS paid her salary. Doc. 43 ¶ 12. Thus, CHS's only cited precedent undermines its argument.

[4] On summary judgment, the Court analyzes Devincenzo's race discrimination claims under Title VII, § 1981, and PHRA under the same framework. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999) (noting that on summary judgment, the standards governing federal claims under Title VII and section 1981 are the same as that under a state PHRA claim).

> 802]. Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). In applying this framework, the Court must "examine the evidence of record in the light most favorable to [Devincenzo,] as the party opposing summary judgment, and resolve all reasonable inferences in her favor." *Stewart v. Rutgers State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997) ("This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues") (citation omitted). Because Devincenzo has adduced sufficient evidence to allow a rational factfinder to conclude that she has established a prima facie claim of race discrimination and has rebutted CHS's non-discriminatory reason by demonstrating pretext, the Court finds that Devincenzo's race discrimination claims survive summary.

### 1.    *Prima facie case*

To make out a *prima facie* claim under Title VII, a plaintiff must demonstrate that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position he held; (3) [s]he suffered an adverse

employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination." *Jackson v. Commonwealth of Pennsylvania*, 218 F. Supp. 3d 332, 336 (M.D. Pa. 2016) (citation omitted).

Here, the parties do not dispute Devincenzo's membership in a protected class. Doc. 37 at 15 ("Plaintiff is a member of a protected class as an African American."). CHS, however, contests the second factor, arguing that Devincenzo "was not qualified for the HSM position." *Id.* But CHS's job description for the HSM position required only a bachelor's degree in health services and nursing. Pl.'s Ex. LL, Doc. 42-39 at 2 (HSM job description); Doc. 38-1 at 181 (showing same). Devincenzo has a Master of Science degree in nursing. *See* Resume, Doc. 42-3 at 4. Devincenzo, therefore, easily qualifies. Whether an individual is subjectively proficient at a job is one thing, whether she is objectively qualified for it is another. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) ("We determine a plaintiff's qualifications for purposes of proving a prima facie case by an objective standard.").

CHS also disputes whether Devincenzo suffered an adverse employment action because after it "made a business decision to part

ways with Plaintiff and, as a professional courtesy, offered her transition assistance. . . . It was at that point that Plaintiff resigned her employment." Doc. 37 at 20. The Court recognizes that "different inferences might be drawn from the evidence presented in the record," *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000), but on summary judgment, the Court's role is not to act as a factfinder. *Id.* It must draw all reasonable inferences in Devincenzo's favor, and in doing so, the Court finds that it would be reasonable to infer that CHS terminated Plaintiff.

To determine whether an employee was forced to resign, courts consider, among other factors, whether she was threatened with discharge or she was encouraged to resign. *See Mcilmail v. Pennsylvania*, 381 F. Supp. 3d 393, 404–05 (E.D. Pa. 2019) (examining factors applicable to constructive discharge doctrine). Here, CHS convened to discuss Devincenzo's performance issues and determined to "part ways." Doc. 37 at 20. Kroutch further confirmed that CHS was "parting ways" with Devincenzo, indicating that she would be terminated if she did not resign. Doc. 42-13 at 65:10–20. Any remaining doubts as to Devincenzo's resignation letter are resolved in her favor because Kroutch confirmed

that to help Devincenzo from a career perspective, CHS—after resolving to terminate Devincenzo—offered to accept a resignation to provide her with a "soft landing." *Id.*; *see also* Doc. 42-2 at 65. As such, a reasonable inference in Devincenzo's favor establishes that she was terminated and thus suffered an adverse employment action. *See Mcilmail*, 381 F. Supp. at 406 (finding as sufficient to demonstrate a claim of constructive discharge where a plaintiff showed that he might be terminated if he did not resign); *see also Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999) ("Employee resignations . . . are presumed to be voluntary[,] . . . until the employee presents evidence to establish that the resignation . . . was involuntarily procured.").

Under the final prong, Devincenzo has submitted "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 356 (3d Cir. 1999). Although Devincenzo need not prove that she was replaced by someone outside of her member class, *id.*, such evidence is sufficient to establish an inference of discrimination. *See Marzano v. Comp. Sci. Corp.*, 91 F.3d 497, 503 (3d Cir. 1996) ("It is sufficient to show that the Plaintiff was discharged, while the employer

retained someone outside the protected class") (citation modified). Here, Devincenzo has established an inference of discrimination by proving that CHS hired a white individual as her replacement. Doc. 42-4 at 9. Drawing all reasonable inferences in Devincenzo's favor, the Court finds that she has established a prima facie case of employment discrimination. *Jones*, 198 F.3d at 412 ("At the prima facie case stage of the analysis, we merely determine whether a plaintiff has presented sufficient evidence so that we should consider a defendant's proffered reasons for its decision.")

### 2. CHS's non-discriminatory reason

If a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to "articulate a legitimate nondiscriminatory reason for the adverse employment action at issue." *Jones*, 198 F.3d at 412, citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997). "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Here, CHS has articulated a non-discriminatory reason

for terminating Devincenzo because it "determined that Plaintiff's skills and abilities were not aligned with those necessary to perform [her] role." Doc. 37 at 19. CHS supports its assertion by submitting deposition testimonies from its management. *E.g.,* Doc. 38 ¶ 25, citing Doc. 38-1 at 93–95 (Ribbans Tr. at 36–38). Taking CHS's evidence as true, it permits the conclusion that CHS terminated Devincenzo for a nondiscriminatory reason. *Fuentes*, 32 F.3d at 763.

### 3.    *Pretext analysis*

"Once the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." *Fuentes*, 32 F.3d at 763.

At trial, Devincenzo must convince the factfinder "*both* that the reason was false, and that discrimination was the real reason." *Jones*, 198 F.3d at 412–13 (emphasis in original), quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). At summary judgment, a plaintiff must demonstrate a pretext for discrimination by presenting evidence from which a reasonable factfinder could "either (1) disbelieve the

employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Johnson v. FedEx*, 996 F. Supp. 2d 302, 319 (M.D. Pa. 2014), quoting *Fuentes*, 32 F.3d at 764.

On summary judgment, the Court finds that, viewing all the facts and drawing reasonable inferences in the light most favorable to the Plaintiff, Devincenzo has produced sufficient evidence to allow a factfinder to conclude she has discredited CHS's reason for her termination by a preponderance of the evidence. *See id.* Under the summary judgment standard, the record, viewed in its entirety, could be found to undermine CHS's explanation that it terminated Devincenzo for poor job skills and performance.

First, the "Defendant[] state[s] that no formal discipline was issued to Plaintiff during her employment." Def.'s Resp. to Pl.'s Interrogatories, Doc. 42-4 at 8. Second, at least two former co-workers, Metzger and Harper, vouch for Devincenzo's professionalism and competency. Metzger Aff., Doc. 42-5 ¶¶ 6–9; Doc. 42-24 at 22:17–25, 23:1–11 (describing Devincenzo as "[v]ery capable, knowledgeable, [and] intelligent."). This evidence suffices for the purpose of summary

judgment to raise an inference that CHS's proffered reason for terminating Devincenzo was pretextual. Accordingly, the Court finds that Devincenzo's race discrimination claims survive summary judgment.

### C.   Devincenzo's remaining claims

Devincenzo's remaining claims (retaliation, hostile work environment, and disability discrimination) fail to survive summary judgment.

### 1.   *Retaliation claims*

A plaintiff asserting a retaliation claim must first establish a prima facie case by showing: "(1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Daniels v. Schl Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015), quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). The Court finds that Devincenzo has failed to make out a prima facie case of retaliation.

Devincenzo fails to overcome several hurdles. To begin with, it is unclear whether Devincenzo engaged in a protected employee activity by making a complaint on February 2, 2023. Devincenzo has no evidence supporting her version of the events other than her own testimony. Doc. 43 ¶¶ 43, 69, 90, 108, citing Doc. 42-2. To be clear, "self-serving" testimony may be utilized by a party at summary judgment. *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 501 (3d Cir. 1995), quoting *Celotex*, 477 U.S. at 324. But such evidence "does not suffice to create a material dispute of fact where [it] is impeached by a well-supported showing to the contrary." *Gonzalez v. Sec'y of DHS*, 678 F.3d 254, 263 (3d Cir. 2012), quoting *United States v. 717 S. Woodward St.*, 2 F.3d 529, 533 (3d Cir. 1993). Here, Devincenzo's version of the events, that, at a meeting thirteen days prior to her termination, she reported racial discrimination to CHS's HR personnel, is unsupported by the record. In fact, Devincenzo's own email sent to CHS the day after the alleged meeting mentions nothing about discrimination, let alone racial discrimination. Pl.'s Ex. X, Doc. 42-25 at 2. Instead, it supports CHS's version of the events, that the meeting was held to address Devincenzo's poor job performance. In the email, Devincenzo writes:

> Yesterday when Shaun stated, "You do not want to learn," it stung. Please reach out to Jane Humphries to see my zest and drive to overcome my situation. I do want to learn. I am open to learning. I learn every day. I participate. I am present. I enjoy learning! I enjoy it so much that I take what I have learned and implement it into my office.

*Id.*

Drawing all reasonable inferences in Devincenzo's favor, the Court finds that Devincenzo can neither establish a protected act, nor draw a causal connection between the alleged act and her termination. Nor can Devincenzo do so with the discrimination complaint filed and resolved in November because her termination was three months later. "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007). Therefore, the Court will grant CHS's motion for summary judgment as to Devincenzo's retaliation claims.

### 2.    *Hostile work environment claims*

Next, Devincenzo contends that she was "subjected to ongoing racially discriminatory treatment by members of [CHS]'s management."

Doc. 42 at 30. Devincenzo points to three main incidents: (1) the one-time reading of the "biased, insensitive, discriminatory," book that had been read in Devincenzo's presence; (2) mistreatment by Anna Papero; and (3) being "yelled and screamed at," for her complaints of race discrimination. Doc. 43 ¶¶ 49–51, 68, 70. Drawing all reasonable inferences in Devincenzo's favor, the three incidents, viewed as a whole, do not rise to the level of an intentional, severe, or pervasive racial discrimination.

To succeed on a claim of hostile work environment, a plaintiff must prove that: (1) the plaintiff suffered intentional discrimination because of her race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in that position; and (5) the existence of respondeat superior liability. *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999). To determine whether an environment is hostile, the Court must consider the totality of the circumstances including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Mandel v. M & Q Packaging Corp.*, 706

F.3d 157, 168 (3d Cir. 2013), quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Moreover, the Court must not parse out each event and view them separately, but rather as a whole to determine whether the acts that collectively form the continuing violation are severe or pervasive. *Id.*

Here, Devincenzo's evidence, viewed as a whole, does not establish a continuing pattern of violations that are severe or pervasive. First, as Devincenzo points out, at least one co-worker also found the reading of "Visiting Day" by Jacqueline Woodson offensive. Doc. 43 at 20. But Devincenzo fails to allege how that reading was meant to intentionally discriminate against *her*, based on her race, or that it was pervasive. To the contrary, Devincenzo admits that the book was read "to all employees involved in . . . training."[5] Doc. 38 ¶ 47; Doc. 43 ¶ 47. Second, as noted

---

[5] At the time of Devincenzo's employment, Devincenzo was "one of three African Americans on the Center's five-person management team." Doc. 38 ¶ 28, citing Doc. 38-1 at 46–56 (Papero Tr. at 27–37). Devincenzo also submits no evidence to suggest her other black co-workers were discriminated against by the reading of "Visiting Day." Although Devincenzo is not required to demonstrate the discrimination against other black co-workers, the "key focus of the *prima facie* test is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." *Cooper v. Pa. Human Rels. Comm'n*, 578 F. Supp. 3d 649, 662 (M.D. Pa. 2022) (citation

before, Devincenzo's claim that she brought up racial discrimination in the meeting on February 2, 2023, is contradicted by her own email, in which she appears to plead her case about her ability to learn and perform her job while mentioning nothing about discrimination. *See* Doc. 42-25 at 2. Third, Devincenzo alleges that she was "yelled and screamed at," during the meeting on February 2, 2023 (Doc. 43 at 23), but again submits no evidence to suggest the yelling was racially motivated. *See* Doc. 42-25 at 2. Devincenzo's own email to CHS's management suggests that the alleged yelling was in regard to her work performance. *Id.* ("Yesterday when Shaun stated, 'You do not want to learn,' it stung.").

Drawing all reasonable inferences in Devincenzo's favor, the Court does not find that the evidence Devincenzo submitted rises to severe or pervasive discrimination. At most, the evidence amounts to "isolated incidents that the Supreme Court . . . cautioned should not be severe or pervasive enough to constitute a hostile work environment" *Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005), citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also Cooper v. Pa. Human Rels.*

---

modified). Evidence of broader racial discrimination, while not necessary, would be relevant.

*Comm'n*, 578 F. Supp. 3d 649, 666 (M.D. Pa. 2022) (finding no pervasive racial discrimination even though a plaintiff was subject to animosity because the claim rested on "isolated comments" and the proof fell short of "racially rooted hostility specifically targeting the plaintiff that the law forbids."). Accordingly, the Court will grant CHS's motion for summary judgment as to Devincenzo's hostile work environment claims.

### 3.    *Disability claims*

Devincenzo's last claim also fails on summary judgment because she cannot establish a prima facie case of discrimination based on disability. To establish a prima facie case of discrimination under the ADA and PHRA, the plaintiff must show: "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor v. Phoenixville Schl. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999), quoting *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

CHS argues that Devincenzo cannot establish the third element of her prima facie case of discrimination because CHS had no knowledge of

Devincenzo's disability. *See* Doc. 37 at 30–33; Doc. 44 at 13–15. Devincenzo's only argument in opposition is that she "was terminated within months of disclosing her mental health conditions to Defendant and requesting accommodations." Doc. 42 at 32. She maintains that because she was terminated within months of disclosing her disability, that "timing, in and of itself," establishes disability discrimination. *Id.* It does not.

Causation between a protected activity (Devincenzo disclosing her disability and requesting an accommodation) and an alleged retaliatory action (termination) may be proved by inference when: (1) a short period of time separated an aggrieved employee's protected conduct and an adverse employment action; and (2) the decision maker had knowledge of the protected activity. *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006). In the context of establishing temporal proximity, the Third Circuit has considered a "short period of time" as less than three months. *Fasold v. Justice*, 409 F.3d 178, 190 (3d Cir. 2005).

Here, even assuming Devincenzo has established the first two elements of her disability discrimination claim, she has clearly failed to establish causation. To support her causation argument, Devincenzo

cites to various pages of her deposition transcript. Doc. 42 at 32, citing Doc. 42-2 at 127:20–25, 128:1–16, 163:10–12, 158:15–25, 164:10–15. None of those pages, however, discuss her being discriminated against for having a disability. Her first citation is to a meeting held in early February 2023, which Devincenzo contends was to discuss discrimination. Doc. 42-2 at 127:20–25. But she never testified that she was somehow discriminated against for her disability. *Id.* In fact, Devincenzo testified that she called "the meeting to express the discriminatory behavior in which I felt I was being discriminated based upon the race." *Id.* at 130:23–25. Devincenzo, understandably, did not cite to that testimony in support of causation.

The only other evidence Devincenzo directs the Court to consider is when she requested to work from home on the day she was terminated. *Id.* at 158:15–25. Devincenzo testifies that "[t]o work from home was a one-time occurrence." *Id.* at 158:24–25. But again, Devincenzo does not testify that her request to work from home had any relation to a disability. *See id.* at 158:19–20 ("I needed to work from home that particular day."). Construing all facts and reasonable inferences in Devincenzo's favor, the Court does not find that Devincenzo has

established a prima facie case of disability discrimination. The Court,
therefore, will grant CHS's motion for summary judgment as to
Devincenzo's disability claims.[6]

## IV.    **CONCLUSION**

Accordingly, the Court will grant in part and deny in part CHS's
motion for summary judgment.

Date: November 21, 2025                    s/*Sean A. Camoni*
                                           Sean A. Camoni
                                           United States Magistrate Judge

---

[6] There may also be a question as to whether Devincenzo has proven the
existence of a disability. *See* Pl.'s Ex. FF, Doc. 42-33 at 2 (showing one
page of an unidentified medical record and treating provider, listing
posttraumatic stress disorder as an ongoing health issue). CHS, however,
failed to raise this argument, and, given the reasoning above, it would
not change the analysis.